UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUPAL SHAH,<br><br>                  Plaintiff,<br><br>        v.<br><br>EBIX, INC., ROBIN RAINA, in his individual and professional capacities, DARREN JOSEPH, in his individual and professional capacities, and ASH SAWHNEY, in his individual and professional capacities,<br><br>                  Defendants. | Civil Case No.: 2:19-cv-03229<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rupal Shah, by and through his attorneys, Faruqi & Faruqi, LLP, hereby alleges as follows against Defendants Ebix, Inc. ("Ebix" or the "Company"), Robin Raina, Darren Joseph, and Ash Sawhney (collectively, "Defendants"):

## PRELIMINARY STATEMENT

1. Over his nearly four years of working for Ebix, Plaintiff was one of Defendants' top salespeople, earning the Company millions of dollars.

2. Despite this, Defendants repeatedly failed to pay Plaintiff in accordance with the terms of his compensation plan.

3. Indeed, Defendants denied Plaintiff money that he had earned and to which he was contractually entitled in several ways, including by cutting his commissions by 30% without justification and while acknowledging that doing so breached the compensation plan.

4. Moreover, Defendants also capped Plaintiff's commissions on multi-year contracts at 18 months.

5. In fact, on several deals Plaintiff closed, Defendants paid him no commission at all.

1

6. Finally, when Plaintiff met and exceeded the benchmarks to receive the "Annual President's Circle Award" in three consecutive years, Defendants again failed to honor their contractual promises, thereby denying Plaintiff non-discretionary raises and bonuses, as well as a seven-day, expenses paid vacation.

7. To redress these wrongs, Plaintiff brings claims for breach of contract, unjust enrichment, and violations of the New York Labor Law, N.Y. Lab. Law §§ 190, *et seq.* ("NYLL").

## JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this action because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## PARTIES

**A.   Plaintiff Rupal Shah**

10. Plaintiff is a citizen of the State of New York.

11. Plaintiff was employed by Defendants from on or around February 24, 2014 through on or around October 3, 2018.

12. At all relevant times, Plaintiff was an "employee" of all Defendants within the meaning of all relevant statutes and regulations.

**B.   Defendant Ebix**

13. Ebix is a foreign corporation.

14. Ebix is incorporated in the State of Delaware.

15. Ebix's principal place of business is located in Johns Creek, Georgia.

16. At all relevant times, Ebix was an "employer" within the meaning of all relevant statutes.

**C.     Defendant Robin Raina**

17. Mr. Raina is the Chief Executive Officer of Ebix and a citizen of the State of Georgia.

18. At all relevant times, Mr. Raina established, implemented, disseminated, and controlled all of Defendants' employment policies.

19. At all relevant times, Mr. Raina controlled and directed the terms and conditions of Plaintiff's employment.

20. At all relevant times, Mr. Raina maintained and exercised his power to hire, fire, discipline, and promote Plaintiff.

21. At all relevant times, Mr. Raina was an "employer" within the meaning of all relevant statutes and regulations.

**D.     Defendant Darren Joseph**

22. Mr. Joseph is the Corporate Vice President of Finance & Human Resources for Ebix and a citizen of the State of Georgia.

23. At all relevant times, Mr. Joseph established, implemented, disseminated, and controlled all of Defendants' employment policies.

24. At all relevant times, Mr. Joseph controlled and directed the terms and conditions of Plaintiff's employment.

25. At all relevant times, Mr. Joseph maintained and exercised his power to hire, fire, discipline, and promote Plaintiff.

26. At all relevant times, Mr. Joseph was an "employer" within the meaning of all relevant statutes and regulations.

**E.**     **Defendant Ash Sawhney**

27. Mr. Sawhney is the President of Insurance Solutions for North America for Ebix and a citizen of the State of Florida.

28. At all relevant times, Mr. Sawhney established, implemented, disseminated, and controlled all of Defendants' employment policies.

29. At all relevant times, Mr. Sawhney controlled and directed the terms and conditions of Plaintiff's employment.

30. At all relevant times, Mr. Sawhney maintained and exercised his power to hire, fire, discipline, and promote Plaintiff.

31. At all relevant times, Mr. Sawhney was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

**A.**     **Background**

32. Ebix is an international supplier of on-demand software and e-commerce solutions to the insurance, financial, and healthcare industries.

33. On or around January 13, 2014, Defendants hired Plaintiff as a salesperson for EbixExchange, an insurance industry software exchange sold by Ebix.

34. In this role, Plaintiff was responsible for selling prospective and current clients on Ebix's products and services.

35. As memorialized in a signed offer letter, Defendants agreed to pay Plaintiff a base salary of $110,000, plus additional incentive compensation.

36. On or around February 24, 2014, Plaintiff began working at Ebix.

37. On or around May 12, 2014, Plaintiff signed the 2014 Calendar Year Commission Plan (the "Plan"), which detailed the various forms of incentive compensation Defendants agreed to pay Plaintiff, contingent upon his satisfaction of different sales goals. *See* Exhibit A.

38. Pursuant to its terms, the Plan "replace[d] all previous compensation plans in their entirety except that the payment of commission for the cash received for contracts sold under the previous contract shall survive." *Id.* at 4.

39. Further, the Plan remained valid through the end of 2014 and "for any years following as long as the company has not put into place a new plan." *Id.*

40. On or around May 22, 2014, Plaintiff signed Amendment 1 to the Plan ("Amendment 1"), which altered three minor provisions. *See* Exhibit B.

41. Amendment 1 also provided that all terms and conditions of the Plan remained in effect unless they were "inconsistent with, conflict[ed] with or var[ied] from the provisions of" Amendment 1. *Id.*

42. Amendment 1 was the only amendment or written alteration of the Plan while Plaintiff was employed by Ebix.

43. Moreover, Defendants never entered into a new commission agreement with Plaintiff.

44. In other words, the Plan, as amended by Amendment 1, remained in effect throughout the entirety of Plaintiff's employment.

45. As detailed below, Defendants repeatedly failed to comply with the multiple express provisions of the Plan.

**B.     Retention of 30% of Plaintiff's Commissions On All Commissionable Work**

46.     Per the Plan, Defendants agreed to pay Plaintiff 4-6% of cash collected on new contract sales and "upsells," or new statements of work or new work requests obtained from existing clients obtained in the course of servicing an account.

47.     While Plaintiff delivered Ebix millions of dollars in new contracts and upsells, Defendants consistently failed to abide by this provision of the Plan.

48.     On September 12, 2014, Defendants acknowledged this repeated breach of the Plan by way of an email from Doug Massey, the Company's Vice President of Sales for EbixExchange, to Plaintiff.

49.     In the September 12, 2014 email, Mr. Massey wrote, "I know Ash [Sawhney] called you earlier this week and told you that ***Ebix was only going to pay 70% of the commission earned*** on TPP items to the team. I also understand that ***this information conflicts with the commission plan currently in place*** for 2014." (emphasis added).

50.     Despite the Company's express acknowledgement that doing so breached the Plan, throughout Plaintiff's employment, Defendants paid him only 70% of his commissions earned on all commissionable work.

51.     As a result of Defendants' repeated breaches of the Plan, Plaintiff has sustained significant damages.

**C.     Refusal to Pay Plaintiff His Full Commissions Earned on Multi-Year Contracts**

52.     As noted above, Plaintiff was entitled to his full 4-6% commission on all new contracts and upsells under the Plan, paid out each month.

53.     Where Plaintiff secured a contract with a term of multiple years ("Multi-Year Contract"), his commissions were capped at 36 months under the Plan.

6

54. Throughout his employment, Plaintiff procured several Multi-Year Contracts collectively worth millions of dollars.

55. Nevertheless, Ebix refused to pay Plaintiff all of his commissions earned on Multi-Year Contracts, again in direct violation of the Plan.

56. Specifically, whereas the Plan entitled Plaintiff to 36 months' worth of commissions, Defendants capped his commissions on Multi-Year Contracts at 18 months.

57. In fact, on one occasion in October 2017, Defendants deducted approximately $13,000 from commissions owed to Plaintiff for the express reason that Defendants had inadvertently paid Plaintiff "past the 18-month mark" of the Multi-Year Contract.

58. Moreover, by way of clarification, even on the first 18 months of his Multi-Year Contracts, Plaintiff was still being paid only 70% of the commissions Defendants owed him.

59. As a result of Defendants' repeated breaches of the Plan, Plaintiff has sustained significant damages.

D. **Failure to Pay Plaintiff Any of His Earned Commissions**

60. In addition to unjustifiably reducing and/or capping Plaintiff's commissions, Defendants also failed to pay Plaintiff any commissions at all on several deals he had closed, despite his entitlement to the same under the Plan.

61. By way of example only, in 2015, Plaintiff secured a contract with a client, Customer ID No. 54-0028841, worth over $6 million.

62. The contract provided that Ebix was to perform various services for the client, on which Plaintiff was to be paid commissions under the Plan.

63. Without explanation or justification, Defendants failed to pay Plaintiff any commission at all for several of the services performed under the contract he had obtained.

7

64. As a result of Defendants' repeated breaches of the Plan, Plaintiff has sustained significant damages.

### E. Refusal to Pay Plaintiff Compensation Earned for Receiving the "Annual President's Circle Award"

65. The Plan also provides that Defendants will pay additional compensation to Plaintiff if he meets the conditions necessary to receive the so-called "Annual President's Circle Award" (the "Award").

66. The conditions precedent to receiving the Award, and the compensation that comes with it, are simple: Plaintiff must deliver $2 million worth of new deals in a calendar year.

67. Under the Plan, Plaintiff was entitled to an "[a]utomatic 10% raise in base salary" and a "bonus check of $25,000.00" each calendar year in which he delivered $2 million worth of new deals. *Id.* at 2.

68. Additionally, Plaintiff was entitled to a "7-day paid holiday to a resort destination for [him] and one guest with a 4 star or above hotel, economy airline booking, and food expenses up to $1,500 paid for by the Company."

69. In 2014, 2015, and 2016 Plaintiff exceeded the $2 million benchmark and met all other requirements to receive the Award.

70. However, Defendants never gave Plaintiff the raises, bonuses, or vacations to which he was entitled under the Plan.

71. As a result of Defendants' repeated breaches of the Plan, Plaintiff has sustained significant damages.

### F. Other Wage Violations

72. Throughout Plaintiff's employment, Defendants established that Plaintiff was to be paid his base compensation semi-monthly, with his regularly-scheduled paydays being the first

8

and fifteenth days of each month.

73. Under the terms of the Plan, when Defendants collected payment from a client in connection with commissionable work by Plaintiff, Defendants were to pay Plaintiff his earned commissions on the fifteenth day of the subsequent month. *See* Exhibit A at 3 ("Commissions earned shall be paid on the closest payroll to the last day of the month following the month eligible cash was collected (assuming all other earning criteria have been met). For example, commissions earned on cash collected in January will be paid with the payroll closest to the last day of February.").

74. Throughout the statutory period, Defendants failed to pay Plaintiff all base compensation and commissions owed on his regularly scheduled paydays.

75. Indeed, both Plaintiff's base compensation and his commissions were repeatedly paid to him approximately two to six weeks late.

76. Moreover, in June 2016, Plaintiff received a $20,000 raise in his base salary.

77. In late 2017, Plaintiff noticed that Defendants had not factored his raise into any of the paychecks he had received for the previous year-and-a-half.

78. Plaintiff raised this issue with Mr. Joseph multiple times, but Defendants failed to take corrective action.

79. It was only after Plaintiff complained to Human Resources that, in March 2018, Defendants paid Plaintiff the approximately $33,000 he was owed from June 2016 through January 2018 as backpay.

80. Further, Plaintiff performed work for Defendants on October 1, 2018, October 2, 2018, and October 3, 2018.

9

81. To date, Defendants still have not paid Plaintiff any compensation for work performed on October 1, 2018, October 2, 2018, and October 3, 2018.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
**(*Against Defendant Ebix*)**

82. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

83. On or around May 12, 2014, Ebix presented Plaintiff with the Plan, a contract laying out the terms various forms of incentive compensation Ebix agreed to pay Plaintiff, contingent upon his satisfaction of different sales goals.

84. On the same day, Plaintiff accepted Ebix's offer and signed the Plan, thereby creating a binding contract.

85. Plaintiff performed all duties and obligations under the terms of the Plan.

86. However, Ebix knowingly and materially breached the Plan by, *inter alia*, failing to pay Plaintiff all of his earned commissions and failing to compensate him for earning the Award.

87. As a result of Ebix's willful breach, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT
**(*Against Defendant Ebix*)**

88. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

89. On or around May 12, 2014, Ebix presented Plaintiff with the Plan, a contract laying out the terms various forms of incentive compensation Ebix agreed to pay Plaintiff, contingent upon his satisfaction of different sales goals.

90. On the same day, Plaintiff accepted Ebix's offer and signed the Plan, thereby creating a binding contract.

91. Plaintiff performed all duties and obligations under the terms of the Plan.

92. However, Ebix knowingly and materially breached the Plan by, *inter alia*, failing to pay Plaintiff all of his earned commissions and failing to compensate him for earning the Award.

93. Accordingly, Ebix retained the benefit of Plaintiff's uncompensated work under circumstances which rendered it inequitable and unjust for Ebix to retain such benefits without paying for their value.

94. As a result of Ebix's unjust enrichment, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED
**(*Against All Defendants*)**

95. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

96. Throughout the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

97. The NYLL requires covered employers, including Defendants, to compensate commission salespersons in accordance with their agreed terms of employment.

98. Plaintiff was not exempt from this requirement and is entitled to be paid by Defendants in accordance with the agreed terms of his employment, including, *inter alia*, the agreed terms memorialized in the Plan.

99. By the actions described above, Defendants have failed to pay Plaintiff all of his wages owed.

100. As a result of Defendants' failure to compensate Plaintiff in accordance with the agreed terms of his employment, Defendants have violated the NYLL and/or applicable regulations thereunder.

101. Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

102. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: UNLAWFUL DEDUCTIONS
**(*Against All Defendants*)**

103. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

104. During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

105. The NYLL prohibits covered employers, including Defendants, from making deductions from employees' wages, except those expressly authorized in writing by the employee and for the benefit of the employee, those in relation to recovery of an overpayment of wages where such payment is due to a mathematical or other clerical error by the employer, or those in relation to an repayment of advances of salary or wages made by the employer to the employee.

106. Plaintiff was not exempt from the requirement that his employer not make unlawful deductions from his wages.

107. By the actions described above, Defendants made unlawful deductions from Plaintiff's wages.

108. As a result of Defendants' unlawful deductions from Plaintiff's wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

109. Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

110. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: FAILURE TO PAY FINAL WAGES
(*Against All Defendants*)

111. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

112. During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

113. The NYLL requires covered employers, including Defendants, upon the end of an employee's employment, to pay that employee's final wages not later than the regular pay day for the pay period during which his employment ended.

114. Plaintiff was not exempt from the requirement that Defendants pay him his final wages.

115. By the actions described above, Defendants have failed to pay Plaintiff his final wages.

116. As a result of Defendants' failure to pay Plaintiff his final wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

117. Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

118. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## SIXTH CAUSE OF ACTION
## VIIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
### (*Against All Defendants*)

119. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

120. During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq.*, and 650, *et seq.*, as well as all applicable regulations thereunder.

121. The NYLL requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends and/or commissions are earned.

122. Plaintiff was not exempt from the requirement that Defendants timely pay him his all of his wages owed.

123. By the actions described above, Defendants have failed to pay Plaintiff all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends and/or commissions are earned.

124. As a result of Defendants' failure to pay Plaintiff all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

125. Defendants have acted deliberately in maintaining an intentional practice of failing to compensate Plaintiff in accordance with the NYLL.

126. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover damages to the greatest extent permitted under the law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable New York State and common law;

B. Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. Grant Plaintiff an award of damages sustained as a result of Defendants' violations of the NYLL, plus such pre-judgment interest;

D. Grant Plaintiff an additional award of liquidated damages because Defendants' violations of the NYLL were without good faith basis;

E. Grant Plaintiff an award of costs that he has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law;

F. Grant Plaintiff an award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest; and

G. Grant such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: May 30, 2019                             **FARUQI & FARUQI, LLP**

                                                By: */s/ Innessa M. Huot*
                                                    Innessa Melamed Huot
                                                    Alex J. Hartzband
                                                    Patrick J. Collopy

                                                    685 Third Avenue, 26th Floor

New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
pcollopy@faruqilaw.com

*Attorneys for Plaintiff*

New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
pcollopy@faruqilaw.com

*Attorneys for Plaintiff*